UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-10527-RGS

COLLINS ZACHARY SEAN ANTHONY,[1]
CARINA BERTELLA,
and DONALD M. WEEKS,
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED

v.

JETDIRECT AVIATION, INC.,[2]
JETDIRECT AVIATION, LLC,[3]
JETDIRECT AVIATION HOLDINGS, LLC,
GREGORY S. CAMPBELL,
ROBERT P. PINKAS,
and JOHN DOE BOARD MEMBERS

v.

WAYFARER AVIATION, INC.
and SOVEREIGN BANK

MEMORANDUM AND ORDER ON
SOVEREIGN BANK'S MOTION TO DISMISS

July 26, 2010

STEARNS, D.J.

The named plaintiffs in this action are current and former employees of JetDirect

Aviation (JDA), an aircraft management company.  Plaintiffs brought this suit, individually

and as proposed class representatives, pursuant to the Employee Retirement Income

Security Act (ERISA), 29 U.S.C. § 1001, et seq.  Plaintiffs allege that defendants improperly

---

[1]Terminated as a named plaintiff on May 4, 2010.

[2]Suggestion of Bankruptcy filed June 8, 2009.

[3]Though not yet filed, third-party plaintiffs have also stated that a Suggestion of
Bankruptcy will soon be filed for JDA, LLC.  Opp'n at 2, n.1.

withheld and diverted employee benefit plan funds from their paychecks to meet JDA's obligations to its creditors.  At a hearing on September 29, 2009, the court granted in part and denied in part motions to dismiss brought by the defendants, allowing Count I (breach of ERISA fiduciary duties), Count II (breach by ERISA co-fiduciary), and Count III (ERISA prohibited transactions), to survive while dismissing the common-law state claims set out in Counts IV and V (as preempted by ERISA).  Defendants[4] then brought a third-party Complaint against the successor company to JDA, Wayfarer Aviation, Inc. (Wayfarer) (f/k/a JDA Acquisition Company (JDAAC)), and one of JDA's creditors, Sovereign Bank (Sovereign), claiming breach of fiduciary duty (Count I), contribution (Count II), and indemnity (Count III).  Sovereign filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss the third-party claims against it on January 20, 2010.[5]  A hearing on this motion was held on June 3, 2010.

BACKGROUND

The facts, presumed to be true for present purposes, are as follows.  JDA offered consolidated services in the fields of jet management, jet charter, and fixed-base aircraft operations, including some maintenance work and fuel sales.  In 2008, JDA's business plan began to unravel as the demand for private charter jet services collapsed.  Despite selling off many of its assets, JDA was unable to meet all of its obligations to secured creditors – some $112 million.

On February 17, 2009, JDA announced in a press release that it would sell its

---

[4]All defendants except for Robert Pinkas (who is represented by separate counsel) joined the third-party Complaint.

[5]Wayfarer filed an answer and counterclaims on January 22, 2010.

remaining assets to JDAAC.[6]  Before the sale could be completed, on February 25, 2009,

Sovereign, a secured creditor with first priority, notified JDA and other secured creditors

that it intended to exercise its rights in its JDA collateral on or after March 9, 2009.  On

March 3, 2009, Sovereign declared JDA to be in default and began seizing JDA's assets,

including funds that had been deposited in JDA's general operating account at Sovereign.

Unbeknownst to Sovereign, JDA had commingled employee benefit contributions, including

contributions to employee 401(k) Plans in the operating account.[7]  Sovereign sold JDA's

remaining physical assets to JDAAC on March 19, 2009.

In early 2009, JDA employees had begun to experience delays in receiving

paychecks, benefits, and expense reimbursements.  Plaintiff Carina Bertella alleges in an

affidavit that "[f]or months, money that was withheld by [JDA] from my bi-weekly paycheck,

supposedly to be used as contributions towards my 401k [P]lan, health insurance, life

insurance, and disability insurance, was not used for those purposes."  Bertella Aff. ¶ 2.

Bertella further alleges that defendant Gregory S. Campbell, the President, Chairman, and

CEO of JDA, was "the person who exercise[d] discretionary authority or discretionary

control with respect to the management of the 401k Plan, or the person who exercise[d]

authority or control with respect to the management or disposition of its assets."  Id. ¶ 5.

---

[6]JDAAC is backed by a group of private equity investors led by Brantley Partners. Defendant Robert Pinkas is the managing general partner of Brantley.  He also served as a director and manager of JDA.

[7]Under the implementing regulations for ERISA, employers are allowed until "the 15th business day of the month following" the date of a paycheck withholding to transfer employee contributions to a pension benefit plan.  29 C.F.R. § 2510.3-102(b)(1). As JDA points out, the regulations specifically contemplate that withholdings will not be immediately segregated from an employer's general assets because of payroll processing. See 29 C.F.R. § 2510.3-102(f)(1).

Plaintiffs allege that "the Plans' assets were diverted for [JDA]'s own use and applied to other business expenses and/or were used to pay off creditors." Sec. Am. Compl. ¶ 40.

On March 12, 2009, Jacqueline Tona, the Vice President for Human Resources at JDA, sent an e-mail to employees entitled "Information on 401(k)." The e-mail stated that employee contributions withheld from paychecks in December 2008 and January 2009 had been posted to the employees' 401(k) accounts, but there was "[n]o funding for February yet." Sec. Am. Compl. - Ex. B at 6. Tona also declared that "[e]xecutive management is aware of company obligations to the plan." Id.

A week later,[8] Tona sent a second e-mail to employees acknowledging "lateness in funding the 401(k) Plan for February [2009]," and admitting tardiness in the funding of other benefits. Id. at 7. In addition to the Plan, Tona stated that employee flexible spending accounts were being affected because of JDA's financial problems: "[D]eductions taken from employee checks have not been provided to PayFlex and currently the Company does not have a means to provide those funds to PayFlex." Id. The e-mail also indicated that JDA was behind in payments to health, life, and disability insurance providers, and that continued employee coverage was at risk.

Following conversations with the Department of Labor concerning JDA's "financial situation," JDA stopped withholding deductions from employee paychecks for the Plan and other benefits "until the Company [could] guarantee funding as required by the [P]lan." Id. Tona stated that JDA's "primary goal in stopping the employee deductions [was] to ensure

---

[8]Two dates appear on the e-mail. The body of the message contains a date of March 18, 2009, while the header/timestamp indicates that the e-mail was delivered on March 19, 2009.

that money deducted from employee paychecks [was] properly processed to the corresponding plans.  It is the Company's responsibility to protect employee benefit plans and deductions for those plans . . . ."  Id. at 7-8.  According to media reports, defendant "Robert Pinkas [also] acknowledged the company's responsibility to repay money owed to current and former [JDA] employees."[9]

## DISCUSSION

Sovereign moves to dismiss the third-party plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  The court must dismiss a Complaint if, after accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of a plaintiff, it determines that the Complaint "fails to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In order to defeat a motion to dismiss, a Complaint must contain "enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting the asserted claims.  Fantini v. Salem State Coll., 557 F.3d 22, 26 (1st Cir. 2009), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).  A plaintiff must plead "more than labels and conclusions," and the factual allegations must be sufficient to "raise a right [to] relief above the speculative level." Morales-Tañon v. P.R. Elec. Power Auth., 524 F.3d 15, 18 (1st Cir. 2008) (internal quotation marks omitted).

Count I: Breach of Fiduciary Duty

JDA alleges that Sovereign breached its duty as an ERISA fiduciary under 29 U.S.C. § 1109(a), which states:

[a]ny person who is a fiduciary with respect to a plan who breaches any of

_____

[9]Matt Thurber, JDAAC Plans Payment to Current, Former Employees, Aviation International News, Apr. 2, 2009 (Sec. Am. Compl. - Ex. D).

> the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

The issue before the court is straightforward: May a bank be held liable as a fiduciary under ERISA when it seizes funds from an account of a defaulted debtor in which employee benefit funds have been commingled?

Under ERISA, fiduciaries may fall into one of two categories: "named fiduciaries" and "functional fiduciaries." Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 18 (1st Cir. 1998). Named fiduciaries are "defined either as those individuals listed as fiduciaries in the plan documents or those who are otherwise identified as fiduciaries pursuant to a plan-specified procedure." Id., citing 29 U.S.C. § 1102(a)(2). The statutory language of ERISA defines a functional fiduciary as follows:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

"The key determinant of whether a person qualifies as a functional fiduciary is whether that person exercises discretionary authority in respect to, or meaningful control over, an ERISA plan, its administration, or its assets (such as by rendering investment advice)." Beddall, 137 F.3d at 18 (citations omitted). "Because one's fiduciary

6

responsibility under ERISA is directly and solely attributable to his possession or exercise of discretionary authority, fiduciary liability arises in specific increments correlated to the vesting or performance of particular fiduciary functions in service of the plan, not in broad, general terms." Id.  As the First Circuit has stated, "discretion is a *sine qua non* of fiduciary duty."  Cottrill v. Sparrow, Johnson & Ursillo, Inc., 74 F.3d 20, 22 (1st Cir. 1996) (internal quotation marks omitted).

It is undisputed that Sovereign is not a named Plan fiduciary.  JDA argues the alternative theory – that Sovereign became a functional fiduciary when it took control of the commingled Plan funds in JDA's general operating account.  Sovereign, for its part, cites a First Circuit precedent pointing strongly in the opposite direction.  In O'Toole v. Arlington Trust Co., 681 F.2d 94, 95 (1st Cir. 1982), an employer deposited pension funds with a bank from which it had also taken several loans.  When the bank discovered that the employer was experiencing financial difficulties, it called in the loans and used the deposited pension funds to offset the outstanding debt.  Id.  The trustees of the pension fund brought suit against the bank alleging a breach of ERISA fiduciary duties.  Id.  The Court in O'Toole held that "[w]e cannot find . . . that the bank is a fiduciary within the meaning of the statute. . . . [The bank's] responsibilities as the depository for the funds do not include the discretionary, advisory activities described . . . ." Id. at 96.  Sovereign notes that, apart from the fact that it too had no discretionary duties with respect to the Plan, the bank's actions in O'Toole were "far less defensible."  Sovereign's Mem. at 6.  Unlike Sovereign, which had no knowledge that it was holding commingled funds, the bank in O'Toole "set off deposit accounts which were apparently in the name of the benefit plans, rather than the corporate debtors."  Id.

JDA disputes the relevance of O'Toole and labels it a case "solely" about jurisdiction. Opp'n at 7.  While it is true that the Court ultimately dismissed the action in O'Toole for want of subject matter jurisdiction, JDA ignores the saliency of the point that the jurisdictional finding necessarily flowed from the First Circuit's determination that it "[could not] find . . . that the bank is a fiduciary within the meaning of [ERISA]."  681 F.2d at 96. JDA further mischaracterizes O'Toole as a case involving a "mere" depository bank, while omitting the fact that the bank in O'Toole was, like Sovereign, acting as a secured creditor seeking to offset a corporate debt.  Opp'n at 8.  The only distinction that JDA can credibly draw is that the bank in O'Toole was a named custodian of plan assets, while Sovereign's case that role was played by a separate institution (Fidelity).  Opp'n at 3.  But this distinction simply distances Sovereign even further from anything that could be characterized as a fiduciary responsibility.[10]

While cases from other jurisdictions are cited by the parties, it is unnecessary to address them at any length in light of the enduring authority of O'Toole, the case most closely on point.  See Arizona State Carpenters Pension Trust Fund v. Citibank, 125 F.3d 715, 722 (9th Cir. 1997) (no fiduciary status flowed from a bank's preparing of financial reports); Useden v. Acker, 947 F.2d 1563, 1575 (11th Cir. 1991) (bank was not a fiduciary where its conduct was dictated by a "pre-existing framework of policies, practices and procedures"); Chao v. Unique Mfg. Co., 649 F. Supp. 2d 827, 833-834 (N.D. Ill. 2009)

---

[10]O'Toole is not without its critics.  See Vest v. Gleason & Fritzshall, 832 F. Supp. 1216, 1217 n.4 (N.D. Ill. 1993) (labeling O'Toole as "an egregious example" of the lax approach taken by courts towards banks when they act in a depository capacity under ERISA).  This court, however, is bound by the precedent established by the Court of Appeals of its Circuit and not the opinions of sister district courts in other Circuits.

(management consultant with signature authority for depository account of plan held to be a functional fiduciary); Reichling v. Cont'l Bank, 813 F. Supp. 197, 199 (E.D.N.Y. 1993) (no fiduciary status where bank relinquished deposited plan assets in response to a court order).  Because Sovereign is not a functional fiduciary, Count I necessarily fails.[11]

Counts II and III: Contribution and Indemnity

There is no express right of contribution or indemnity under the ERISA statute. However, there is a split among the Courts of Appeals and even the judges of this district about whether there is a federal common-law right to contribution and indemnity under ERISA.  On the affirmative side, Magistrate Judge Neiman (in a report adopted by Judge Ponsor) found an implied federal common-law right to contribution and indemnity under ERISA "based on the principles of trust law and the promotion of strict fiduciary standards of care."  Duncan v. Santaniello, 900 F. Supp. 547, 551 (D. Mass. 1995).  This view is shared by the Second and Seventh Circuits.  See Chemung Canal Trust Co. v. Sovran Bank/Maryland, 939 F.2d 12, 18 (2d Cir. 1991); Free v. Briody, 732 F.2d 1331, 1337 (7th Cir. 1984).

On the negative side, Judge Gorton more recently noted the Supreme Court's stated reluctance to tamper with a "comprehensive and reticulated" statute's enforcement scheme "by extending remedies not specifically authorized by its text."  Great-West Life & Annuity

---

[11]Although not alleged in a separate count as required by Fed. R. Civ. P. 10(b), the third-party Complaint also states that "Sovereign engaged in prohibited transactions in violation of ERISA."  Third-Party Compl. ¶ 19.  To the extent third-party plaintiffs also claim a distinct cause of action for "prohibited transactions" under 29 U.S.C. § 1106, such a claim fails because, in the current context, it would only be applicable to ERISA fiduciaries. Moreover, it is not clear what "transaction" Sovereign could have taken part in with itself. See Black's Law Dictionary 1635 (9th ed. 2009) (defining transaction as "[a]ny activity involving two or more persons.").

Ins. Co. v. Knudson, 534 U.S. 204, 209 (2002).  This he took as a clear instruction to lower

courts to refrain from creative attempts to fashion ERISA federal common-law rights that

Congress for whatever reason has chosen not to recognize.  Charters v. John Hancock Life

Ins. Co., 583 F. Supp. 2d 189, 195 (D. Mass. 2008).  This reluctance is shared as well by

the Eighth and Ninth Circuits.  See Travelers Cas. & Sur. Co. of Am. v. IADA Servs., Inc.,

497 F.3d 862, 867 (8th Cir. 2007); Kim v. Fujikawa, 871 F.2d 1427, 1432 (9th Cir. 1989).

Although both positions have merits, this court agrees with Judge Gorton's conclusion in

Charters, buttressed as it is by the authoritative dicta in Knudson.

Absent a federal common-law right to contribution and indemnity under ERISA,

JDA's claims in Counts II and III can only survive as state common-law actions.[12]  These,

however, as Sovereign argues, are preempted by ERISA.  Section 514(a) of ERISA, 29

U.S.C. § 1144(a), preempts any and all state claims "related to" an employee benefit plan.

A law "relates to" an ERISA-covered plan if it (1) has a connection with or (2) a reference

to such a plan.  Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., 519

U.S. 316, 324 (1997).  As the First Circuit has summarized:

> [w]hile ERISA's preemption is not boundless, it is far reaching.  In
> determining the reach of ERISA preemption, the Supreme Court
> has cautioned against a literal reading of ERISA § 514(a)'s "relate to" standard,
> and ruled that courts must "'look instead to the objectives of the ERISA
> statute as a guide to the scope of the state law that Congress understood
> would survive.'" Hampers v. W.R. Grace & Co., 202 F.3d 44, 51 (1st Cir.
> 2000)  (quoting N.Y. State Conference of Blue Cross & Blue Shield Plans v.
> Travelers Ins. Co., 514 U.S. 645, 656 (1995)).  ERISA's objectives include
> providing a "uniform national administration of ERISA plans" and avoiding
> inconsistent state regulation of such plans.  Danca v. Private Health Care
> Sys., Inc., 185 F.3d 1, 7 (1st Cir. 1999) (citing Travelers, 514 U.S. at 656-58).

---

[12]Although not alleged in the third-party Complaint, there are statutory rights to
contribution and indemnity in Massachusetts.  See Mass. Gen. Laws ch. 231B, §1(a), (e).

Three categories of state regulation that have been identified as conflicting with these objectives are: 1) those that mandate employee benefit structures or their administration; 2) those that bind plan administrators to a particular choice; and 3) causes of action that provide alternative enforcement mechanisms to ERISA's own enforcement scheme.

Zipperer v. Raytheon Co., 493 F.3d 50, 53 (1st Cir. 2007).[13]   "Congress painted with a broad brush when it added an express preemption clause to the ERISA canvas . . . ." Williams v. Ashland Eng'g Co., 45 F.3d 588, 591 (1st Cir. 1995), abrogated on other grounds by Carpenters Local Union No. 26 v. U.S. Fid. & Guar. Co., 215 F.3d 136, 138 (1st Cir. 2000).

There is a strong presumption that common-law claims that intrude on ERISA's civil enforcement regime are preempted.  See Hampers, 202  F.3d at 50.  See also Carlo v. Reed Rolled Thread Die Co., 49 F.3d 790, 794 (1st Cir. 1995) (negligent misrepresentation claims relating to ERISA coverage are preempted, rejecting Pace v. Signal Tech. Corp., 417 Mass. 154, 158 (1994)); Fairneny v. Savogran Co., 422 Mass. 469, 472 (1996) (a wrongful termination claim based on retaliation for a plaintiff's carrying out fiduciary duties under ERISA is preempted); Kelly v. Fort Dearborn Life Ins. Co., 422 Mass. 15, 17 (1996) (misrepresentations by insurers or plan administrators about the scope of ERISA plan coverage are almost uniformly held preempted, citing federal cases).

The First Circuit has previously explained the reasoning behind ERISA preemption:

[t]he detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in

---

[13]In other words, a state claim is preempted if, in order to prevail, a plaintiff must plead, and the court must find, that an ERISA plan exists or, where there is no express preemption, that the cause of action conflicts directly with an ERISA cause of action. Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 140, 142 (1990).

encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.

Hampers, 202 F.3d at 50.  Consistent with this analysis, other jurisdictions have found ERISA preemption of state common-law contribution and indemnity claims.  See Travelers, 497 F.3d at 868 ("To recognize a state-law cause of action that supplements the federal scheme [where case arises from breaches of duties by a fiduciary in an ERISA-regulated plan] would pose an obstacle to the purposes and objectives of Congress, and the state common-law claims [for contribution and indemnity] are therefore preempted." (internal quotation marks omitted)); Atrix Int'l, Inc. v. Hartford Life Group Ins. Co., 2008 WL 151614, at *5 (D. Minn. Jan. 15, 2008) (state contribution and indemnity claims preempted); Hopper v. Standard Ins. Co., 2007 WL 433369, at *2 (D.N.H. Feb. 7, 2007) (same); Westchester Teamsters Local 456 v. Fleet Nat'l Bank, 2006 WL 2385261, at *10 (S.D.N.Y. Aug. 18, 2006) (state indemnity claim preempted).

While JDA does not dispute this precedent, it argues that if Sovereign is not an ERISA fiduciary, any pursuit of contribution or indemnity must necessarily be unrelated to JDA's ERISA Plan and is thus not preempted.  In support, JDA cites a recent case from this district, W.E. Auchuchon Co. v. BeneFirst, LLC, 661 F. Supp. 2d 37 (D. Mass. 2009).  The court in Aubuchon discussed when causes of action against third-party administrators ("who are normally not 'fiduciaries' within the meaning of ERISA") are preempted by ERISA. Id. at 46.  JDA points to the Court's broad statements that: (1) "claims brought by *participants or beneficiaries* seeking to recover damages for failure to receive anticipated benefits have been found to be preempted"; and (2) "[c]laims on behalf of *plans . . .* against

third-party administrators for breach of contract or professional malpractice generally have not been found to be preempted." Id. (emphases in original). However, Aubuchon was factually limited to a breach of contract claim that was permitted to go forward on the longstanding principle that ERISA plans are not restricted by the statute in contracting for services. See id. at 47-48.

Here, it is impossible to imagine how Counts II and III could not "relate to" an ERISA plan, when JDA's entire Complaint is predicated on a response to a threatened class action on behalf of Plan members. Further, the relief sought is the disgorgement of the Plan funds seized by Sovereign that are "owed to the Plans." Third-Party Compl. at 10. Because such relief could not be granted by the court without reference to the Plan, Counts II and III are preempted under ERISA section 514. See Carlo, 49 F.3d at 794 ("[B]ecause the 'court's inquiry must be directed to the plan,' the [plaintiffs'] claims are preempted under the first test set forth in Ingersoll-Rand. 498 U.S. at 140.").

JDA also makes a policy argument that its common-law state claims should not be precluded if its claim under ERISA is dismissed. "If . . . Sovereign is correct that it is not a fiduciary, than [sic] it cannot successfully insulate itself from common law claims of contribution and indemnity on the basis of preemption. . . . [Sovereign's] argument would preclude it from being liable to pay . . . money back to the plan participants under any circumstances, whether under ERISA or by means of state law contribution and indemnity claims." Opp'n at 17. However, even assuming *arguendo* that JDA has alleged every possible claim available to it, the very case JDA relies on teaches a conclusion opposite to the one that JDA urges on the court. "ERISA preemption may apply even where the result leaves a gap in the enforcement scheme. Indeed, it may apply even where it

13

produces results that are unfair or illogical." <u>Aubuchon</u>, 661 F. Supp. 2d at 46, citing <u>Carlo</u>, 49 F.3d at 794.  <u>See also</u> <u>Wilmington Shipping Co. v. New England Life Ins. Co.</u>, 496 F.3d 326, 341 (4th Cir. 2007) ("ERISA's preemptive scope is not diminished simply because a finding of preemption will leave a gap in the relief available to a plaintiff."); <u>Felix v. Lucent Techs., Inc.</u>, 387 F.3d 1146, 1162 (10th Cir. 2004) ("It is true that our opinion leaves open the uncomfortable possibility that Plaintiffs may lack standing to sue under ERISA, but will then be preempted in state court under § 514 from asserting a state claim, leaving them with no remedy.  Although this is a valid concern, we have not found it to be a concern of the federal judiciary."); <u>Spain v. Aetna Life Ins. Co.</u>, 11 F.3d 129, 132 (9th Cir. 1993) ("While we are not unmindful of the fact that our interpretation of the pre-emption clause leaves a gap in remedies within a statute intended to protect participants in employee benefit plans, the lack of an ERISA remedy does not affect a pre-emption analysis." (quoting <u>Corcoran v. United HealthCare, Inc.</u>, 965 F.2d 1321, 1333 (5th Cir. 1992) (citations omitted) (abrogated on other grounds))).  <u>Cf</u>. <u>McMahon v. Digital Equip. Corp.</u>, 162 F.3d 28, 38-39 (1st Cir. 1998) (state-law claims relating to employee benefit plan preempted despite dismissal of ERISA claim).

Finally, even if Counts II and III are not preempted, Sovereign argues persuasively that the dismissal of Count I is dispositive.  Under Massachusetts law, contribution is available only when two or more persons become jointly liable in tort.  "Contribution claims are derivative and not new causes of action. Without liability in tort there is no right of contribution. . . ." <u>Berube v. City of Northampton</u>, 413 Mass. 635, 638 (1992).  Here, because JDA's theory is premised on the unsuccessful breach of fiduciary duty claim, there is no tort and hence no right to contribution.  "Indemnity, on the other hand, allows

someone who is without fault, compelled by operation of law to defend [itself] against the wrongful act of another, to recover from the wrongdoer the entire amount of [its] loss, including reasonable attorney's fees." <u>Elias v. Unisys Corp.</u>, 410 Mass. 479, 482 (1991). Again, because JDA asserts no "wrongful act" by Sovereign other than its failed breach of fiduciary claim, Count III fails for this reason as well.

<u>ORDER</u>

For the foregoing reasons, Sovereign's motion to dismiss is <u>ALLOWED</u>.  The Clerk will enter judgment for third-party defendant Sovereign.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE